UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI WILEY, | Case No.: 3:17-cv-202-JLS-NLS |
| Plaintiff, | **REPORT AND RECOMMENDATION FOR ORDER:** |
| v. | |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 13]; and** |
| Defendant. | **(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 14]** |

Lori Wiley ("Plaintiff") brings this action under the Social Security Act. *See* 42 U.S.C. § 405(g). Plaintiff seeks judicial review of the Social Security Administration's ("Defendant") final decision denying her claim for disability insurance benefits. This case was referred for a report and recommendation on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After considering the papers submitted, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross motion for summary judgment be **GRANTED**.

///

## I. BACKGROUND

### A. Procedural History

Plaintiff filed a Title II application for Social Security Disability Insurance on October 15, 2013, and a Title XVI application for Supplemental Security Income ("SSI") Benefits on October 21, 2013. Administrative Record ("AR") 157-58, 161-66. She alleges a disability onset date of July 1, 2010. AR 157, 161. The Commissioner denied Plaintiff's claim initially on January 6, 2014 and on reconsideration on May 16, 2014. AR 100-11. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 22, 2015. AR 32. Plaintiff was represented by counsel at the hearing. *Id.* Plaintiff and vocational expert Katie T. Macy-Powers testified at the hearing. AR 14.

On August 3, 2015, the ALJ issued a decision denying Plaintiff's request for benefits, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act from July 1, 2010, through the date of the decision. AR 14. Plaintiff filed a Request for Reconsideration on January 16, 2014. AR 106. On December 12, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for judicial review purposes. AR 1-6. Plaintiff timely commenced this action in federal court.

### B. Plaintiff's Background and Testimony

Plaintiff was born on October 23, 1954. AR 33. Plaintiff claims that she suffers from, among others, fibromyalgia, diabetes mellitus, obesity, depression, hypertension, asthma, anemia, degenerative joint disease, and right lower extremity pain. AR 216, 234-35.

Regarding education, Plaintiff has a General Education Diploma. AR 33. Plaintiff has held a variety of jobs. Beginning in 1992 to 2001, Plaintiff worked full-time as an exhibit associate. AR 34, 178-79. In 2002, she worked as a marketing associate. AR 34, 179. Between 2003 and 2005, Plaintiff worked in retail. AR 33-35, 179. From 2005 to 2006, Plaintiff worked for a hotel in Arizona where she would make arrangements and

help with events.  AR 35, 179-80.  This full-time position allowed Plaintiff to mostly sit during the event setup stages but stand during the actual events.  AR 35.  From 2006 through 2010, Plaintiff worked as a telemarketer.  AR 35, 179-80. She was working in telemarking at her disability onset date.  Subsequently, from November 2012 until February 2013, Plaintiff worked as a seasonal retail employee, working three or four hour shifts.  AR 36, 185.  In October 2012, she worked for one week creating edible arrangements.  AR 36-37, 186.  And in 2013, Plaintiff worked as a grocery story courtesy clerk for one month.  AR 37, 185.

Plaintiff lives in a home similar to a boarding house.  AR 162.  She is given a small chore that she does daily, which she states usually takes her about ten to fifteen minutes to complete.  AR 39.  This can include wiping down appliances in the kitchen or cleaning the bathroom.  *Id.*  Certain days her chore will be to sweep the sidewalk outside her home, but she claims she can only do a section of the sidewalk each day.  *Id.*  During the rest of her day, Plaintiff attends appointments and classes by taking the bus or trolley.  *Id.* And, up to twice a month, she goes to the grocery store.  AR 40.

Since her disability onset date in 2010, Plaintiff states she has problems with lifting objects and being on her feet.  AR 36-37.  She claims to experience pain in her neck, back, fingers, hips, and knees, and the worst pain that she experiences is in her right leg from the knee down.  AR 42-43.  She also states that it is difficult for her to be around people because she suffers from depression and anxiety.  AR 41-42.

At her hearing, when the ALJ asked her how much time she could spend on her feet without it being too much, Plaintiff explained that she could stand for ten or fifteen minutes and then needs to sit down.  AR 38.  When questioned on how she accomplishes her daily tasks and chores while only being able to stand or walk for ten or fifteen minutes, Plaintiff clarified that she plans her trips so that she does not have to go very far and chooses classes and locations "that [have] the least amount of walking."  AR 40.

///
///

### C. Documentary Medical Evidence

#### 1. Physical Health

##### A. *Dr. Park*

Plaintiff began receiving medical treatment at the Family Health Centers of San Diego ("FHC") in November 2010. *See generally* AR 242-310; 318-338; 348-366, 395-443. Medical records show that she returned for visits every few months for general medical reasons, including with complaints about pain and to refill her prescriptions. During these visits, she was seen by various physicians.

On January 22, 2014, Dr. Park from FHC prepared a check box medical report concerning the verification of Plaintiff's physical incapacity. AR 311. He indicated that Plaintiff's disability was permanent and that she was unable to perform any work, including sedentary/clerical work but could care for herself. *Id.* However, Dr. Park indicated that he was unable to evaluate Plaintiff's capacity to lift, push, pull, sit, stand, squat, kneel, conduct overhead work, or restrictions on hand use. *Id.*

##### B. *Dr. Lee*

Plaintiff's medical records also indicated that she began being seen at St. Paul's PACE ("PACE") in April 2015. *See generally* AR 453-504. Dr. Lee prepared a check box medical source statement on May 26, 2015. AR 522-23. He reported that Plaintiff had diagnoses of diabetes mellitus and neuropathy, fibromyalgia, anemia, hypertension, and chronic kidney disease and that her general prognosis was "fair." AR 522. In reporting on Plaintiff's residual functioning capacity, Dr. Lee estimated that Plaintiff could sit for eight hours out of an eight-hour work day and could stand for one hour out of an eight-hour work day. AR 523. Dr. Lee assessed that Plaintiff could occasionally lift and carry less than ten pounds, rarely lift and carry twenty pounds, and could never lift and carry twenty or fifty pounds. *Id.* He also indicated that she needed a walker to aid in standing and walking. *Id.* Overall, Dr. Lee opined that Plaintiff would be unable to work due to her multiple medical conditions and was not a malingerer. *Id.*

///

### C.    *Dr. Dao*

Dr. Dao performed a consultative complete internal medicine evaluation of Plaintiff on April 8, 2015. AR 372-80. She reported complaints of diabetes, hypertension, asthma, and fibromyalgia. *Id.*

In regards to the complaint of diabetes, Dr. Dao's impression was that Plaintiff's blood sugars were not well controlled, but he detected no signs of diabetic peripheral neuropathy or diabetic ulcers. AR 376-77. Plaintiff's hypertension and asthma were assessed as asymptomatic. AR 377. Dr. Dao stated that on the day of the examination Plaintiff did not have enough tender points to associate her with fibromyalgia. *Id.* However, Dr. Dao also reported Plaintiff had a "1+ pitting edema of the lower extremities," bilateral crepitus of the knees, tenderness of the medial aspect of the left and right knees through palpation, and a normal gait. AR 375-76. Plaintiff was noted as obese, in no acute distress, with no ataxia or dyspnea noted. AR 374.

Based on his examination, Dr. Dao concluded Plaintiff could: lift, carry, push, or pull fifty pounds occasionally and twenty-five pounds frequently; stand, sit, or walk for six hours out of an eight-hour day; sit for six hours out of an eight-hour day; climb, stoop, kneel, and crouch frequently; and had no manipulative, visual, or communicative limitations. AR 377.

### D.    *Dr. Spellman and Dr. Nordlicht*

Dr. Spellman prepared a Disability Determination Explanation opinion at the initial stage of Plaintiff's disability process, while Dr. Nordlicht provided a Disability Determination Explanation opinion at the reconsideration stage. AR 56-70, 72-93. They found Plaintiff's statements regarding her symptoms to be partially credible and found her postural activities limited to occasional. AR 59-60, 67-68, 78-79, 89-90. Both doctors determined Plaintiff was not disabled and that, while she had some limitations in her ability to perform work related activities, her symptoms were not severe enough to prevent Plaintiff from performing her previous work as a telemarketer. AR 62-63, 70-71, 81-82, 92-93.

### 2.    Mental Health

#### A.    *Dr. Hodges*

Plaintiff received mental health services at PACE from Dr. Hodges beginning in April 2015.  AR 505-519.  Dr. Hodges prepared a DSM-IV Multiaxial Evaluation of Plaintiff on June 19, 2015.  AR 520.  Dr. Hodges identified Plaintiff's symptoms as including generalized persistent anxiety and mood disturbance.  *Id.*  He further indicated that Plaintiff's symptoms have lasted or could be expected to last at least twelve months. *Id.*  Dr. Hodges opined that Plaintiff had mild restrictions on her activities of daily living and moderate difficulties in maintaining social functioning, concentration, and persistence or pace.  *Id.*

#### B.    *Dr. Weiss*

Dr. Weiss reviewed Plaintiff's Medical Evidence of Record and accompanying documents at the reconsideration stage.  She noted that Plaintiff's depression as mostly in remission, she was sleeping better, had improved coping, was social, goes to the beach, and her mental status was reported as normal.  AR 77, 88.  Overall, Dr. Weiss determined that Plaintiff's medically determinable impairments were nonsevere.  AR 77, 88.

#### D.    Vocational Expert's Testimony

Vocational Expert ("VE") Katie Macy-Powers testified at the hearing.  AR 47. She characterized Plaintiff's vocational background as a customer service clerk at the light exertion level, with a Specific Vocational Preparation ("SVP") of 4.  AR 48. Plaintiff's work as a telemarketer was assessed at a sedentary exertion level, SVP of 3. *Id.*  Both Plaintiff's work as a display representative and as a sales clerk were listed at the light exertion level, SVP of 3.  *Id.*

The ALJ posed this first hypothetical to the VE, asking whether an individual with the same age, education, and work experience as Plaintiff who had these limitations could perform Plaintiff's past relevant work as a telemarketer or customer service clerk: limited to light work; could stand or walk for no more than four hours for the day; stand no more than thirty minutes at one time, walk no more than thirty minutes at one time; and

required a cane for ambulation over 100 feet.  AR 49.  The VE replied that a person with these limitations would be able to work as a telemarketer and customer service clerk, but not as an exhibit display representative or sales clerk.  *Id.*  Extending the hypothetical, the ALJ questioned whether having a non-public restriction would eliminate the possibility of working as a customer service clerk or telemarketer.  AR 50.  The VE affirmed that a non-public restriction would eliminate the remaining possibilities.  *Id.*

Plaintiff's attorney created a second hypothetical, using the same limitations as described in the first hypothetical but added that the person experienced difficulty with complex and detailed work and was limited to only simple routine tasks.  *Id.*  The VE replied that the individual would not be able to work as a telemarketer or customer service clerk and would have no transferrable skills.  *Id.*

## II.  THE ALJ DECISION

### A.  The Sequential Process

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months.  42 U.S.C. §§ 423(d), 1382c(a)(3).  The Social Security regulations establish a five-step sequential evaluation to determine whether an applicant is disabled under this standard.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

At step one, the ALJ determines whether the applicant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(b).  If not, then at step two the ALJ must determine whether the applicant suffers from a severe impairment or a combination of impairments.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(c).  If the impairment is severe, at step three the ALJ must determine whether the applicant's impairment or combination of impairments meets or equals an impairment contained under 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(d).  If the applicant's impairment meets or equals a listing, he or she must be found disabled.  *Id.*

7

If the impairment does not meet or equal a listing, the ALJ must determine the applicant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e). Then, the ALJ must determine at step four whether the applicant retains the residual functional capacity to perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(f). If the applicant cannot perform past relevant work, at step five the ALJ must consider whether the applicant can perform any other work that exists in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(g).

The applicant carries the burden to prove eligibility from steps one through four but the burden at step five is on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### B.     Substance of the ALJ's Decision

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2010, the alleged onset date. AR 16.

At step two, the ALJ determined Plaintiff's fibromyalgia, diabetes mellitus, obesity, hypertension, asthma, degenerative joint disease, and right lower extremity pain constituted severe impairments. *Id.* In addition, the ALJ determined that Plaintiff's medically determinable impairment of depression did not constitute a severe impairment and only caused Plaintiff minimal limitations. AR 17-18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that would meet or medically equal the severity of any listed impairments. AR 18-20.

The ALJ next established that Plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she could perform only occasional postural activities and could not climb ladders, ropes, or scaffolds. AR 20. The ALJ also found Plaintiff could stand for thirty minutes at a time, walk for thirty minutes at a time, and stand and/or walk for four hours cumulatively during an eight-hour workday. *Id.* She required a cane for ambulation over 100 feet, could perform frequent left foot controls and occasional right foot controls, and could

have frequent exposure to all environmental conditions, but only occasional exposure to pulmonary irritants and no exposure to hazards. *Id.*

With these limitations, at step four, the ALJ determined Plaintiff could perform her past relevant works as both a telemarketer and a customer service clerk. AR 23. Thus, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act from July 1, 2010, the alleged disability onset date, through August 2, 2015, the date of the decision. AR 24.

### III. DISCUSSION

In challenging the ALJ's denial of benefits, Plaintiff argues the ALJ committed reversible error and did not base his decision on substantial evidence because he (1) did not properly credit Plaintiff's testimony, and (2) failed to properly consider the opinions of Plaintiff's treating doctors. ECF No. 13 at 12-19.

### A. Legal Standard of Review

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Batson*, 359 F.3d at 1193. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotation and citation omitted). It is a "highly deferential" standard of review. *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008). If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Molina*, 674 F.3d at 1111. It is not the court's job to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *Batson*, 359 F.3d at 1193.

///

## B. The ALJ Properly Considered Plaintiff's Testimony

In making a final determination, an ALJ must determine the extent to which a claimant's symptoms "can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [those] symptoms affect [the claimant's] ability to work." 20 C.F.R. § 404.1529(a). A claimant's subjective symptoms must be considered in a disability evaluation. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). But those statements alone cannot be decisive on a disability claim. 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). It is the province of the ALJ to make findings of fact as to a claimant's credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

In deciding whether to credit a claimant's testimony about subjective symptoms or limitations, an ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196; *Smolen*, 80 F.3d at 1281. Under the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms. *Batson*, 359 F.3d at 1195; *Smolen*, 80 F.3d at 1281. "[T]he claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. If this test is satisfied, and there is no affirmative evidence that the claimant is malingering, then the ALJ must determine the credibility of the claimant's subjective complaints. At step two, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine whether and how these symptoms limit a claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). The ALJ may reject the claimant's testimony about the severity of symptoms as long as he gives clear, specific, and convincing reasons for doing so. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Batson*, 395 F.3d at 1195.

In weighing a claimant's credibility, the ALJ may consider the following factors: 1) reputations for being honest; 2) inconsistencies in the claimant's testimony; 3) inconsistencies in the claimant's conduct; 4) daily living activities; 5) work record; and 6) physician's testimony concerning the symptoms alleged. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Daily activities may be grounds for an adverse credibility finding if the claimant is able to perform substantial physical functions that could be transferred to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In rejecting a plaintiff's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). However, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Here, at step one, the ALJ accepted the following as objective medical evidence: a recent x-ray of Plaintiff's right knee; a report from a consultative examination; and Plaintiff's medical history records. AR 21-22, 328, 356, 373-77, 399, 413, 504. The ALJ concluded that that the medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 21. However, at step two of the credibility analysis, the ALJ found Plaintiff's statements of disability less than fully credible because they were inconsistent with the medical records and her daily living activities. AR 20-23. Thus, this Court must determine whether he gave specific and convincing reasons to reject her testimony.

### 1. *Medical Records*

While the medical records generally show that Plaintiff has some functional limitations, the ALJ found that her statements regarding the intensity, persistence and limiting effects of her symptoms were not fully supported by the medical evidence. AR 21-22.

1    First, in analyzing the record, the ALJ clearly acknowledged that Plaintiff has

2    some functional limitations in her lower extremities because of the combined effects of

3    degenerative joint disease, obesity, and fibromyalgia.  AR 21.  For example, he points to

4    an x-ray of her right knee, showing slow degenerative changes consistent with

5    osteoarthritis.  AR 21, 504.  He also noted that Plaintiff has shown some signs of

6    limitations during consultations, particularly calling out a visit on April 8, 2015 with Dr.

7    Dao where she demonstrated evidence of crepitus in her knees and exhibited tenderness

8    in her knees.  AR 21, 375-77.  Thus, the ALJ limited Plaintiff's work to the light

9    exertional level and limited her standing and walking to 30 minutes at a time, and to 4

10   hours cumulatively for the 8-hour workday.  AR 21.

11   However, declining to impose further restrictions, the ALJ noted other evidence in

12   the medical record that appeared to refute Plaintiff's statements as to the severity of her

13   limitations.  He noted that Plaintiff has a grossly intact range of motion and a normal gait

14   during her April 8, 2015 consultation.  *Id.*  The ALJ also cited to a report from a June

15   2015 physical therapy session which stated that Plaintiff's "pain symptoms have

16   generally been reported as in the mild to moderate range," with Plaintiff's pain generally

17   running as a 3-4 out of 10.  AR 21, 453, 503.  The ALJ also took into consideration

18   Plaintiff's other medical conditions, including diabetes, high blood pressure, and asthma,

19   but—with citations to the record—found that these impairments did not cause Plaintiff

20   any further limitations.  AR 21-22.

21   The Court finds that these citations are specific enough to constitute substantial

22   evidence to support the ALJ's credibility finding.  *See* Social Security Ruling 96-7p

23   (credibility findings "must be sufficiently specific to make clear to the individual and to

24   any subsequent reviewers the weight the adjudicator gave to the individual's

25   statements").  Further, it was appropriate for the ALJ to consider this evidence when

26   assessing Plaintiff's credibility.  *See Smolen*, 80 F.3d at 1284 (finding ALJ can consider

27   objective medical evidence when assessing credibility).

28   ///

## 2.    *Activities of Daily Living*

The ALJ also discredited Plaintiff's complaints of disabling symptoms and limitations because he found it inconsistent with her self-reported activities of daily living, including performing light household chores, utilizing public transportation, and shopping for groceries.  AR 22.  Plaintiff asserts that the ALJ mischaracterized her testimony regarding her ability to perform daily activities and incorrectly concluded that her testimony was inconsistent with her pain-related impairments.  ECF No. 13 at 13-14.

In assessing the credibility of subjective complaints, the ALJ may consider the claimant's daily activities.  *Tonapetyan v. Halter*, 242 F.3d 144, 148 (9th Cir. 2001); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 404.1529(c)(3)(i).  Differences between a claimant's allegations and her conduct qualify as substantial evidence that may be used in a credibility determination.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The court is aware, though, "that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014).  But, where a level of activity is inconsistent with a claimant's claimed limitations, then the activities bear on a claimant's credibility.  *Id.*

Here, the ALJ noted that Plaintiff's daily activities include performing light household chores, using public transportation, and grocery shopping.  AR 22.  The ALJ acknowledged that "the claimant clearly experiences some degree of difficulty as a byproduct of her impairments" and imposed restrictions on the exertional level and limitations on Plaintiff's ability to stand/walk.  AR 22-23.

Plaintiff argues that the ALJ's analysis erred in two ways.  First, Plaintiff argues that the ALJ misconstrued her testimony by failing to specifically note that Plaintiff testified that she sometimes needed to break up certain chores she was assigned (such as sweeping the sidewalk) into sections and that she would plan her trips to activities, classes, and doctor's appointments to require the least amount of walking.  ECF No. 13 at

13

9; ECF No. 15 at 3. The Court declines to find any error in the ALJ's failure to specifically mention this testimony. As to her chores, the aforementioned limitations do not appear inconsistent with the ALJ's statement that the Plaintiff is able to perform *light* household chores. And while Plaintiff did testify that she could only walk or stand for 10 to 15 minutes for the whole day (AR 38, 40), when questioned by the ALJ about how she goes to her appointments and classes, she only stated that she would plan the trip to minimize walking but never testified that she would be prohibited from taking a trip if it required more than 15 minutes of walking or standing at a time. In contrast to the case cited by Plaintiff, in ALJ in *Garrison v. Colvin*, failed to mention that the plaintiff there was heavily assisted by her mother in carrying out the daily tasks she was credited with and that she was regularly prohibited from engaging in many other normal household activities. 759 F.3d at 1015-16. While the ALJ did not repeat every detail of Plaintiff's testimony verbatim, he did not materially misconstrue her statements.[1]

Second, Plaintiff argues that the ALJ failed to explain how her daily activities were transferrable to a work setting. ECF No. 13 at 10. The ALJ found that the physical, mental, and social abilities and interactions that are required to perform her reported daily activities reflect the abilities and interactions that are necessary to obtain and maintain employment. AR 22. The ALJ directly cited to activities that Plaintiff testified about, including her abilities to perform light household chores, taking public transportation, and shopping for groceries. Plaintiff's past work included employment as a telemarketer and a customer service clerk. The ALJ did not make a logical leap in concluding that Plaintiff's ability to participate in these activities required her to engage in work-typical tasks, such as walking/standing, lifting, utilizing transportation and engaging in at least

---

[1] However, even assuming the ALJ should have explicitly mentioned this testimony, any such error would be harmless, in light of Plaintiff's other self-reported daily activities and evidence from the medical record. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).

14

some social interactions, diminished Plaintiff's credibility in claiming functional limitations severe enough to prohibit Plaintiff from all work. The tasks that Plaintiff testified that she performs here differ in nature from the tasks that the court found to be not transferrable to the work place in the case Plaintiff cites, *Vertigan v. Halter*. The *Vertigan* plaintiff was only able to go grocery shopping with assistance and the other activities she cited were for leisure, including walking in malls, getting together with friends, playing cards, swimming, watching television and reading. 260 F.3d at 1049.

Moreover, unlike in *Vertigan*, the ALJ discredited Plaintiff's testimony not only based on conflicts with her reported activities of daily living, but because of her medical record as well. The Court finds that the ALJ's finding that Plaintiff's daily activities were inconsistent with the claimed limitations is reasonable and supported by substantial evidence cited in the record. Thus, the Court, may not "second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (upholding adverse credibility determination even though there were other ways to reasonably interpret the claimant's testimony regarding daily activities).

## C.      The ALJ Properly Considered the Opinions of Plaintiff's Treating Doctors

Plaintiff next contends that the ALJ failed to properly consider the opinions of her treating physicians, Dr. Lee and Dr. Park, as well as her treating psychologist, Dr. Hodges. ECF No. 13 at 15-19.

As a general rule, more weight should be given to the opinion of a treating doctor than to the opinion of a source who does not treat the claimant. *Lester*, 81 F.3d at 830-31; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). The rationale behind giving a treating source's opinion greater weight is that "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Winans*, 853 F.2d at 647. However, an ALJ may disregard a treating source's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Where a treating doctor's opinion is not contradicted by another doctor, a commissioner can only reject the

treating doctor's opinion for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If the treating source's opinion is contradicted by another source, the general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations. *Winans*, 853 F.2d at 647. When there is a conflict between the opinions of a treating source and an examining source, the Ninth Circuit requires that, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *see also Lester*, 81 F.3d at 830-31.

When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Tonapetyan*, 242 F.3d at 1149; *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."); *Molina*, 674 F.3d at 1111-12 (noting an "ALJ may 'permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions'" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996))). The more consistent a medical opinion is with the record as a whole, the more weight it is given. *See* 20 C.F.R. § 404.1527(d)(4). A treating source's opinion on the nature and severity of an impairment is given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. § 404.1527(d)(62). The opinion of a consultative examiner that rests on the examiner's own independent examination and clinical findings can alone constitute substantial evidence for rejecting a conflicting opinion from a treating source. *See Tonapetyan*, 242 F.3d at 1149. It is then solely the province of the ALJ to resolve the conflict. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the Court finds that the opinions of the treating doctors are contradicted by those of the other doctors, and thus applies the "specific and legitimate" reasons standard.

### 1.    *Treating Physicians*

Plaintiff argues that while the opinions of Dr. Park and Dr. Lee are contradicted by other doctors in the record, the ALJ failed to provide sufficient reasons based on substantial evidence in rejecting their opinions.  ECF No. 13 at 12-13.

In considering the opinions of Dr. Park and Dr. Lee, the ALJ noted that they opined Plaintiff was "limited to a less than full range of sedentary work" and "incapable of working." AR 22. Dr. Lee opined that Plaintiff could sit for 8 hours a day, stand/walk for 1 hour a day, occasionally lift up to 10lbs, rarely lift 10lbs, and never lift 20 or 50lbs in an 8-hour workday.  AR 523.  The ALJ did not fully reject these opinions but gave them little weight because "as discussed in the remainder of [the ALJ decision], the claimant continues to be capable of returning to prior work despite the limitation outlined in the above residual functional capacity." *Id.*

First, earlier in the opinion, the ALJ noted some discrepancies in the medical record that caused him to modify the limitations in determining her residual functioning capacity to be different from that opined by Dr. Park and Dr. Lee.  The ALJ pointed to specific medical evidence in the record that indicated the Plaintiff had a grossly intact range of motion, normal gait, and mild to moderate pain levels.  AR 21.  To the extent conflicting evidence exists in the medical record, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 at 1041.

Second, Dr. Park and Dr. Lee's opinions were discounted because they were contradicted by the opinions of Drs. Dao, Spellman, and Nordlicht. AR 22-23.  Dr. Dao conducted a physical consultative exam and reviewed Plaintiff's medical records. AR 22. He opined that Plaintiff could work at the medium exertional level and was capable of climbing, stooping, kneeling, and crouching on a frequent basis.  *Id.*  In justifying his reliance on Dr. Dao's opinion, the ALJ explained that he gave greater weight to Dr. Dao's opinion because it was "supported by a detailed narrative summary of specific

clinical signs" and is "generally consistent with the medical evidence of record." AR 22, 375-77. For example, Dr. Dao observed that Plaintiff exhibited crepitus of the knees bilaterally and that there was tenderness on palpation of the medial aspect of the left and right knee. AR 376. He found that the range of motion in the knees was normal bilaterally. *Id.* He also found that her gait was normal and that she could stand on her heels and toes. AR 377. Nevertheless, the ALJ imposed stricter limitations than Dr. Dao did, for example limiting Plaintiff to the light exertional level and limiting her cumulative standing/walking time to 4 hours in a workday. AR 22.

Next, the ALJ considered the opinions of Dr. Spellman and Dr. Nordlicht who conducted consultative exams at the initial and reconsideration stages. AR 23, 56-63, 72-82, 83-93. Both physicians found Plaintiff to be limited to the light exertional level. AR 23. The ALJ explained that he gave considerable weight to their opinions because they were acting as acceptable medical sources under 20 C.F.R. § 404.1513, 416.913(a), the opinions were found to be consistent with the majority of the medical evidence, and because, as "medical consultants, they are familiar with the disability process and have significant programmatic knowledge." AR 23. Again, the ALJ imposed stricter limitations than these two doctors did. AR 23.

By citing medical evidence and providing reasons to credit the other doctors' opinions, the Court, therefore, finds that the ALJ gave "specific and legitimate" reasons based on "substantial evidence" to support his partial rejection of Dr. Park and Dr. Lee's opinions.[2] *Lester*, 81 F.3d at 830-831; *Tonapetyan*, 242 F.3d at 1149 ("When confronted

---

[2] Recently, the Ninth Circuit reversed an order affirming the denial of an SSI and DIB because, in part, the ALJ failed to properly analyze the claimant's fibromyalgia-related symptoms and erred by giving no weight to the treating physician's opinion as to the intensity, persistence, and limiting effects of her fibromyalgia. *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017). Though neither party affirmatively raised this case to the Court, the Court acknowledges the relevance of the Ninth Circuit's ruling but finds the present case distinguishable. There, the ALJ gave "no weight" to the claimant's treating rheumatologist, a physician with specialized knowledge of fibromyalgia, and did not

with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

## 2. *Treating Psychologist*

The ALJ primarily relied on the opinion of Dr. Weiss in concluding that Plaintiff suffered from no severe mental impairments. AR 18. The ALJ afforded Dr. Weiss's opinion great weight because of its consistency with the record's evidence in finding that Plaintiff had no limitations in activities of daily living caused by her mental impairment, no limitations in concentration, persistence or pace, mild limitation in social functioning, and no extended episodes of decompensation. AR 17-18.

Plaintiff argues that the ALJ erred in rejecting her treating psychologist Dr. Hodges's opinion. Specifically, Plaintiff argues the ALJ did not provide a specific rationale in rejecting his opinion and failed to identify which medical evidence is inconsistent and contradicted. ECF No. 13 at 17.

The ALJ gave two reasons for giving little weight to Dr. Hodges's opinion, because his opinion was "notably inconsistent with the signs and symptoms identified by Dr. Hodges in his treatment records (*see generally*, Exhibit 11F) with respect to any continuous period of at least 12 months" and because it was "inconsistent with the medical evidence of record." AR 18.

As to internal inconsistencies, Dr. Hodges, in his DSM-IV Multiaxial Evaluation conducted on June 19, 2015, concluded that Plaintiff's mental impairment resulted in mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. AR 520. However, as the ALJ noted, he found inconsistencies generally throughout Dr.

---

provide "specific and legitimate reasons" in rejecting the opinion. *Id.* at 663-65. Here, the opinion of a specialist was not involved as neither Dr. Lee nor Dr. Park were rheumatologists and the ALJ gave specific reasons for partially discrediting the treating doctors' opinions.

Hodges's own treatment records. For example, despite concluding she would have moderate difficulties in several areas, Dr. Hodges assessed Plaintiff's mental status, in relevant part, as:

Attention/Concentration: Good
Thought content:        Normal
Insight:                Fair
Perception:             Normal
Judgment:               Fair [and]
Flow of Thought:        Normal

AR 518. The ALJ cited to this exact page in the treatment record in finding that Plaintiff suffered no limitations in cognitive functioning. AR 17. Further, while Dr. Hodges opined Plaintiff has "moderate difficulties in maintaining concentration, persistence or pace," he notably left blank the check-box for "Difficulty thinking or concentrating" on that very form. AR 520. Dr. Hodges also consistently assessed the Plaintiff's cognitive functioning as "oriented/alert." AR 505, 507, 509, 511, 513, 516. Dr. Hodges's notes from individual sessions indicate Plaintiff was making positive progress. *See* AR 506 (noting Plaintiff was "engaged in the problem solving exercise"), 509 (noting Plaintiff was "oriented to cognitive distortions and how they function to maintain negative emotional states . . . [she] recognized the use of several distortions . . . and agreed to use thought stopping and auto correct to interrupt the distortions"), 511 (noting Plaintiff "agreed to take responsibility to make improvements"). These notes from Dr. Hodges's treatment records are inconsistent with his conclusion that Plaintiff's mental impairments result in "moderate" difficulties. The ALJ cited to this treatment record in his decision and may properly rely on such internal inconsistencies to discredit a treating physician's testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that an ALJ may cite internal inconsistencies in evaluating a physician's opinion). The court, therefore, concludes that the ALJ's finding that Dr. Hodges' conclusions were inconsistent with his own treatment record is supported by "specific and legitimate" reasons based on "substantial evidence." *Lester*, 81 F.3d at 830-31.

The ALJ also noted that the limitations identified by Dr. Hodges were inconsistent with the medical evidence. The Court notes this reference, while not supported with a specific citation, is accurate and supports his conclusion. In particular, Exhibits 3F, 4F, and 8F—each of which the ALJ cites and relies on when addressing residual functional capacity—contain references to Plaintiff's positive social and mental state. *See* AR 325 ("enjoys being social, using her tablet and surfing internet, read, go to the beach, feels guilty about not having a job"), AR 353 (repeats prior history, "enjoys being social," etc. and notes "mood: improving"); AR 405 ("mood much improved, future oriented"), AR 418 ("Mood: improving"). While the Court acknowledges that the ALJ should have been more specific in providing citations to the medical record here, any such error is harmless in light of the other reasons the ALJ gave for discrediting Dr. Hodges's opinion. *See Curry*, 925 F.2d at 1131.

In sum, the ALJ cited specific and legitimate reasons based on substantial evidence to reject the opinions of Plaintiff's treating doctors.

## IV. CONCLUSION

The Court finds that the ALJ's decision to deny Plaintiff's benefits is supported by substantial evidence. Accordingly, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's cross motion for summary judgment be **GRANTED**.

///
///
///
///
///
///
///
///
///

3:17-cv-202-JLS-NLS

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties on or before **January 26, 2018**. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before **February 2, 2018**. The parties are advised that any failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's order. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 12, 2018

Hon. Nita L. Stormes
United States Magistrate Judge